## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF CALIFORNIA



**CRAIG CUNNINGHAM,**
**Plaintiff,**

v.

The Litigation Practices Group, PC, Daniel S.
March, United Debt Consultants, LLC,
Ramon Ochoa, Donald Maguire, Blain
Scribner, David Weaver, and April Parra,
Cary Smalley, Howard Gutman, Jayde Trinh,
Marque Carey, Michael Robinson, Randall
Clark, and John/Jane Does 1-5

**Defendant**

§
§
§
§
§
§
§
§
§
§

FILED
CLERK, U.S. DISTRICT COURT

APR 1 1 2022

CENTRAL DISTRICT OF CALIFORNIA
BY             DEPUTY

**PAID**

2:22 cv 2423-GW-ASx

No
CV30

LN

### Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and can be served at 3000
   Custer Road ste 270-206 Plano, Tx 75075.

2. The Litigation Practices Group, PC is a California corporation and can be served at
   17291 Irvine Blvd., ste 101, Tustin, CA 92780 or 17542 17th Street, ste 100, Tustin,
   CA 92780

3. Daniel S. March is the managing Shareholder for Litigation Practices Group and his
   signature is on the documents emailed to the Plaintiff as a result of the illegal
   robocalls in this case. He can be served at 17291 Irvine Blvd., ste 101, Tustin, CA
   92780 or 17542 17th Street, ste 100, Tustin, CA 92780.

4. United Debt Consultants, LLC is an Arizona corporation that can be served at 722 E. Osborn Rd., ste 312, Phoenix, AZ 85014 via corporate officers: Ramon Ochoa, Donald Maguire, Blain Scribner, David Weaver, and April Parra,

5. Ramon Ochoa is a natural person and can be served at 722 E. Osborn Rd., ste 312, Phoenix, AZ 85014

6. Donald Maguire is a natural person and can be served at 722 E. Osborn Rd., ste 312, Phoenix, AZ 85014

7. Blain Scribner is a natural person and can be served at 722 E. Osborn Rd., ste 312, Phoenix, AZ 85014

8. David Weaver is a natural person and can be served at 722 E. Osborn Rd., ste 312, Phoenix, AZ 85014

9. Howard Gutman is a licensed attorney and can be served at 230 US 206, Flanders, NJ 07836

10. Cary Smalley is a licensed attorney who 7015 College Blvd. #375 Overland Park, KS 66211.

11. Jayde Trinh is a natural person and can be served at 17291 Irvine Blvd., ste 101, Tustin, CA 92780 or 17542 17th Street, ste 100, Tustin, CA 92780.

12. Marque Carey is a natural person and can be served at 222 South 1st Street, suite 305 Louisville, KY 40202 or 12500 Kiawah Ct, Louisville, KY 40245

13. Michael Robinson, is a natural person and can be served at 17291 Irvine Blvd., ste 101, Tustin, CA 92780 or 17542 17th Street, ste 100, Tustin, CA 92780.

14. Randall Clark is an attorney who can be served at 80 W. Hollis Rd Ste A Hollis, NH 03049

15. John/Jane Does 1-5 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

16. Jurisdiction. This Court has federal-question subject matter jurisdiction over

Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

17. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendants because they live and reside here and transact business in California

18. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed from California by a California Licensed attorney.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

19. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

20. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

21. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without

the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

22. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

23. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

24. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

25. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

26. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

27. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

28. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

29. The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

30. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

31. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the

TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

32. The Texas Business and Commerce code has an analogous portion that is related to the TCPA and was violated in this case.

33. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

### FACTUAL ALLEGATIONS

34. Rachel with Card Services is the bane of the existance of many consumers. These are calls long since prosecuted by the FTC that make fraudulent, misleading, false promises and exaggerated claims to consumers. These scams have taken place for years and continue to this day. Daniel S. March is the ring leader of one of these scam operations and has directed this scam to continue in the face of consumer complaints for years through his company Litigation Practices Group, which has been the target of multiple lawsuits related to illegal telemarketing calls.

### Illegal Robocalls to the Plaintiff

35. Mr. Cunningham received multiple calls from a variety of spoofed caller ID's that contained a pre-recorded message and were initiated using an automated telephone dialing system. The calls were on behalf of The Litigation Practices Group (hereafter

LPG) and at the express direction of Daniel S. March. Daniel March hired United Debt Consultants, LLC to place illegal robocalls in order to improperly and illegally solicit for legal clients even in states where Daniel March is not licensed to practice law. The calls had a delay of 3-4 seconds of dead air before the pre-recorded message began indicating the calls were initiated using an ATDS. The Plaintiff recieved calls directly from the corporations owned by Daniel S. March and on behalf of these corporations by 3rd party telemarketers for both direct and vicarious liability in this case.

36. Starting in 2021, the Plaintiff recieved multiple calls from multiple spoofed and non-working caller ID's all designed to trick consumers into picking up the phone by using false, misleading, and fraudulent caller ID's. These calls were not related to an emergency purpose or any

37. As as example, one call was  The defendants called at least 20 times to be determined through discovery and send an additional 10 text messages to the Plaintiff's cell phone number for no less than 30 calls and texts.

38. At no time did the defendants properly register with the Texas Secretary of State for telemarketing purposes as required by the Texas Business and commerce code 302.302.

39. Defendant's also sent the Plaintiff a retainer bearing the name and signature of Daniel S. Marsh for legal services as a result of the offending telephone calls on October 27, 2021 to the Plaintiff's email using the pseudonym "Dan Cooper" which the Plaintiff gave during the call. (Ex A)

40. Each call contained a pre-recorded message and was called to a number on the

national do-not-call list.

41.  Each call was sent by an ATDS.

**Defendant Attorney's listed on the website of the Litigation Practices Group are**

**engaging on a common enterprise with Daniel S. Marsh to solicit for clients across**

**the country using illegal Robocalls.**

42. Each and every of the named defendant attorney's are engaged in a common

enterprise with Daniel S. Marsh to improperly solicit for clients through illegal

robocalls in states where these individuals are not licensed. Plaintiff notes that it

doesn't appear that any defendants maintain a license to practice law in North

Carolina or Texas where the Plaintiff resides.

43. As these defendants sought to profit and have admittedly recieved clients from these

illegal robocalls and provide legal services to consumers including the Plaintiff as a

result of the illegal client solicitation attempts by licensed attorney Daniel S. Marsh,

they are each liable for the calls jointly and severally.

**Daniel March's and LPG's and United Debt Consultants, LLC's Knowing and**

**Willful Violations of Telemarketing Regulations**

44.  Mr. Cunningham asked for an internal do-not-call policy, but none was given.

45.  The number the Plaintiff was called on was listed on the national Do not call list prior

to all calls being placed.

46.  The Defendants knowingly violated the TCPA by initiating automated calls with pre-

recorded messages to the Plaintiff.

47.  On information and belief, the Defendants and  did not have a written do-not-call

policy while it was sending Mr. Cunningham text messages.

48. On information and belief, Daniel Marsh and LPG did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

49. Daniel Marsh and LPG did not provide Mr. Cunningham with the name of the individual caller or the name of the person or entity on whose behalf the call was placed,

**Defendants have been repeatedly sued for similar illegal Robocalls and soliciting clients across the country in jurisdictions where Defendants are not licsensed attorney's**

50. Daniel S. Marsh has been repeatedly sued in multiple Federal courts over similar illegal robocalling campaigns where he sought to provide legal services in states where he was not licensed and was practicing law without a license.

51. This is part of a larger pattern and practice by Daniel S. Marsh who has decided to use his law license as a platform to robocall and harass consumers across the country for his debt relief services, which essentially entail the consumer defaulting on their debts and Daniel Marsh swooping in to sue the lenders for any violations of consumer protection laws.

52. For reference, see the following cases:

| | | | | | |
|---|---|---|---|---|---|
| The Litigation Practice Group PC (dft) | 8:2020cv00962 | Brennan Landy v. Leapforward Financial et al | California Central District Court | 05/26/2020 | 04/29/2021 |
| The Litigation Practice Group PC (dft) | 4:2022cv00278 | Jackson v. The Litigation Practice Group PC | Pennsylvania Middle District Court | 02/24/2022 | |
| The Litigation Practice Group, PC (dft) | 1:2022cv00917 | Eaton v. The Litigation Practice Group, PC | Georgia Northern District Court | 03/04/2022 | |
| The Litigation Practice Group, PC (dft) | 3:2021cv00011 | Callier v. The Litigation Practice Group, PC | Texas Western District Court | 01/19/2021 | 04/22/2021 |

| | | | | | |
|---|---|---|---|---|---|
| The Litigation Practice Group, PC (dft) | 3:2021cv00617 | Heier, Patrick v. The Litigation Practice Group, PC | Wisconsin Western District Court | 09/29/2021 | 02/14/2022 |
| The Litigation Practice Group, PC (dft) | 1:22-cv-00810 | Scofield v Litigation Practices Group | District of Colorado | | |
| The Litigation Practice Group, PC (dft) | 1:22-cv-57 | Breech v the litigation Practices Group | S.D. Mississippi | March 2022 | |
| The Litigation Practice Group, PC (dft) | 2:20-cv-02271 | Crane v The Litigation Practices Group | Ohio, removed to Federal | | |

53. Plaintiff notes that none of the 8 filed cases filed involve consumers that reside in a state where the Defendant Marsh or any of the other named defendants and licensed attorneys acting in concert with Defendant Marsh are licensed. Each and every named attorney is practicing law without a license.

54. The named defendant attorneys are soliciting for clients and are listed on the website for Litigation Practices Group as of the date of this document and several have admitted in conversations with the Plaintiff to recieving clients from Defendant LPG as as result of the illegal robocalls.

**This Court has Supplemental Jurisdiction over the state law claims in Texas**

55. As the Plaintiff's claims under state law are substantially related and rise out of the same facts and issues in the underlying Federal Claims, this court has supplemental jurisdiction to hear the Plaintiff's Texas claims against the defendants.

**The Plaintiff's cell phone is a residential number**

56. The text messages were to the Plaintiff's cellular phonne***-***-7262, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use.

The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

57. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants and her corporation violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

58. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I.   FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making

non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

        a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

b.      training for the individuals involved in the telemarketing on the

existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

c.      in the solicitations, the name of the individual caller and the name

of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. §

64.1200(d)(4).[4]

8.      Mr. Cunningham is entitled to an award of at least $500 in damages for

each such violation. 47 U.S.C. § 227(c)(5)(B).

9.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for

each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10.     Mr. Cunningham also seeks a permanent injunction prohibiting

Defendants and their affiliates and agents from making telemarketing solicitations until

and unless they (1) implement a do-not-call list and training thereon and (2) include the

name of the individual caller and Defendants name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.     Mr. Cunningham realleges and incorporates by reference each and every

allegation set forth in the preceding paragraphs.

12.     The foregoing acts and omissions of Defendants and/or their affiliates or

agents constitute multiple violations of the **Texas Business and Commerce Code**

**305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's

cellular telephone number without his prior express written consent in violation of 47

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13.     Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation.**Texas Business and Commerce Code 305.053(b)**

14.     Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

### IV. FOURTH CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.302

15.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

16.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.101**, by making telemarketing calls without being registered with the Texas Secretary of State as required.

17.     Mr. Cunningham is entitled to an award of at least $5000 in damages for each such violation.**Texas Business and** Commerce Code 302.302

### V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against the defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.    An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation and individual for 30 calls.

E.    An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

F.    Award the Plaintiff $5,000 per call for damages under the Texas Business and commerce code 302.302

G.    An award to Mr. Cunningham of damages, as allowed by law under the TCPA;

H.    An award to Mr. Cunningham of interest, costs and attorneys' fees, as allowed by law and equity

I.    Such further relief as the Court deems necessary, just, and proper.


Craig Cunningham
Plaintiff,                              April 5, 2022


Craig Cunningham, Plaintiff, Pro-se 3000 Custer Road, ste 270-206 Plano, Tx 75075

*EX A*

 **Gmail**                                         New Country LLC <newcountryllc@gmail.com>

---

## Dan Cooper - Your document with United Debt Consultants is ready for signature.
1 message

**ClixSign** <notifications@clixsign.com>                         Wed, Oct 27, 2021 at 7:45 PM
To: Dan Cooper <newcountryllc@gmail.com>

                              NOTIFICATION • OCTOBER 27, 2021



### HI Dan Cooper
## Your Electronic Signature Is Requested

You are signer 1 of 1 on this document

Please click the link below to complete the document. If you
have any questions please consult your representative at
United Debt Consultants

REVIEW & SIGN NOW

## Do Not Share

This email contains a secure link to Clixsign. Please do not share this email, link, or access code with others.

## Questions?

If you have any questions or comments about this document or Clixsign, please contact Shanda Gianfrancesco

Clixsign is an Electronic Signature Service. This message was sent to you by Shanda Gianfrancesco (s.gianfrancesco@debtadvisorsus.com) who is requesting your signature on documents. The information contained in this transmission is confidential and is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, please discard and delete this message.

This message is intended for delivery to Dan Cooper (newcountryllc@gmail.com)

## Description of Services to be Performed

LPG will obtain your credit reports, analyze them, and develop strategies for correcting invalid or unlawful debts for which you should not be held legally responsible. Where appropriate, LPG will use existing laws and interact with creditors and credit bureaus on your behalf to invalidate your debts and remove such invalid debts from your credit reports. LPG will also interact with collection agencies, as applicable, to invalidate your debts by requiring them to supply evidence of your indebtedness to them, or any other legal mechanism. LPG will also consult with you regarding all aspects of the credit reporting process, including all laws applicable to the same. LPG will also investigate your delinquent accounts in order to determine the most effective method for invalidating your debts or otherwise removing any legal liability for such debts, up to and including the initiation of lawsuits on your behalf against your creditors and their third-party debt collectors.

In addition, if a lawsuit is filed against you, LPG will represent you in such a lawsuit and will not charge any additional fees for such representation provided such a lawsuit was initiated after the date you sign this Agreement. In the event a lawsuit was initiated against you before the date you execute this Agreement and you elect to have LPG represent you, an additional fee of $500.00 will be charged. Where appropriate, if legal fees are recovered from an adverse party, LPG will retain such fees for its services. You will be responsible to pay any damages resulting from any lawsuit. Any costs incurred in a lawsuit will be paid by LPG out of the fees set forth below, including the fees of any attorney retained on your behalf in a jurisdiction in which LPG is not admitted to practice law. No additional payment from you to LPG will be necessary for the defense of any lawsuit filed against you after the date you execute this Agreement. You will, however, be responsible to pay any damages resulting from such lawsuits or any settlements reached in the course of such lawsuits.

## Fees

You will pay the fees set forth below for the legal services provided by LPG, which services are outlined above. No fee or other cost will be charged or collected beyond the flat fee set forth below. This is the only amount that you have to pay to LPG for its services, which includes any cost, filing fee or vendor's fee associated with LPG's representation of you, and this fee is not escrowed but rather earned received by LPG. This fee does NOT, however, include any settlement that you may have to pay to any creditor if you opt to settle a debt prior to or during the course of a lawsuit.

## Refund Policy

If you reach the conclusion of LPG's representation of you and a debt remains in dispute without resolution, you will be eligible to receive a full refund of the fees that you paid towards your representation in connection with that account (i.e., you will be refunded the fees paid in proportion to the debt that was not resolved). A debt is "in dispute" under this paragraph if, at the time of completion of LPG's representation of you, no lawsuit was filed regarding the debt, no settlement was reached regarding the debt, no acknowledgment of invalidity was received from the creditor regarding the debt, and the debt is still reporting to one of the following credit bureaus: Experian, Equifax, or Transunion.

## Debt Settlement

You may request that LPG settle any debt identified below at any point in the course of LPG's representation of you. Where requested, LPG will negotiate the most favorable settlement it is able to negotiate on your behalf. Any settlement reached as a result of your request shall be your responsibility, and shall be paid directly from you to the creditor. At the point that you reach a settlement with a creditor, your payment to LPG will be reduced and to adjust for the settled account being removed from the representation herein contemplated. LPG will only settle a debt where litigation is active or contemplated.

## Actions Required of You

You agree to provide LPG with any and all correspondence you receive from any creditor, credit bureau, attorney, or court of law. You further agree to keep a log of all communications, including telephonic and electronic communications, from any creditor or credit reporting agency to you from the date you execute this Agreement until the conclusion of your representation.

## Right to Conduct Business Electronically and Contact You

You agree that LPG may contact you electronically and telephonically and that any and all business with LPG may be conducted electronically. You further agree that LPG may transmit data, including that regarding your credit profile, electronically. You further agree that any electronic communication carries the risk of disclosure to a third party and that LPG will not be held responsible for any such inadvertent disclosure of information. A facsimile or email transmission of this signed agreement, via an email attachment or otherwise, will be as valid as the original signed agreement. This agreement may not be modified except in writing by both parties.

## Malpractice Insurance

LPG hereby discloses that it maintains a malpractice insurance policy that covers its representation of you and that the limit of such policy is no less than $1,000,000.00 per claim and $1,000,000.00 per claimant. If you desire to make a claim against that insurance policy, you must first contact LPG and disclose your claim and the nature of the claim, at which point LPG agrees to assist you in obtaining any and all information necessary to prepare a file a claim.

## Applicable Law and Confidentiality

You understand and agree that LPG is based out of the State of California, is a licensed law corporation under the State Bar of California, and that California law applies to this Agreement. You further understand that LPG is bound to strict rules of confidentiality and attorney-client privilege in connection with the rules applicable to attorneys licensed to practice law in the State of California. You further understand and agree that you have sought the representation of LPG with full knowledge of its location and licensing, and that LPG works with attorneys licensed in all 50 states and the District of Columbia as affiliated counsel to allow LPG to provide a complete representation of you in any state in which you are sued or in which a dispute might arise. You have the right to know the licensed attorney with whom LPG has affiliated in any state and at any time but understand and agree that LPG may choose to change the local attorney with whom it is affiliated in any given jurisdiction, provided only that at all times LPG shall have an affiliated attorney in all 50 states and the District of Columbia.

## Client Acknowledgements

By signing this agreement, you acknowledge that LPG has not instructed you to breach any contract, fail to make any required payment, or fail to perform any obligation you have lawfully incurred. LPG reserves the right to terminate this agreement if (a) required by the State Bar of California Rules of Professional Conduct, (b) you refuse to communicate with LPG or respond to reasonable requests for information necessary to represent you in an effective way, (c) you fail to make timely payment of the amount due under hereunder, or (d) your payments are returned multiple times for any reason. LPG will not pay any of the debts identified below and does not guarantee that any debt you now have or may incur will be invalidated or settled in association with LPG's representation of you. You understand and agree that you must forward any communication you receive in printed or electronic form from any creditor, court, or representative of other a creditor or a court to the address, email, or fax number provided below, and that you must keep a log of all telephonic communications with any creditor or credit reporting agency. You, the client, may cancel this Agreement at any time by submitting three days' written notice of cancellation by mail, email, or fax, and shall not be responsible for any payments due after the date of cancellation. A payment due within three days of the date of written cancellation shall be processed and shall not be refunded.

Client Signature: _____

Date: _____

Co-Applicant Signature: _____

Date: _____

**THE LITIGATION PRACTICE GROUP PC**

**Daniel S. March, Managing Shareholder**
**17542 E. 17th Street, Ste 100**
**Tustin, CA 92780**
**Support@LPGLaw.com**
**Tel. 949.715.0644**
**Fax. 949.315.4332**

### Creditor Information

| Creditor | Account # | Debt Balance |
|----------|-----------|--------------|
| CITI | 3245 | $13,227.54 |
| | | **$13,227.54** |

## Client Information

**Name**: Dan Cooper
**Address**: 3000 Custer Rd, Plano TX 75075

**Home Phone:** 615-331-7262
**Cell Phone:**
**Email:** newcountryllc@gmail.com
**Last 4 SSN:** XXX-XX-5558

## Schedule of Payments

I agree to this payment schedule – **Client Initials:**

| Payment # | Process Date | Amount |
|---|---|---|
| 1 | Nov 05, 2021 | $311.84 |
| 2 | Dec 06, 2021 | $311.84 |
| 3 | Jan 05, 2022 | $311.84 |
| 4 | Feb 07, 2022 | $311.84 |
| 5 | Mar 07, 2022 | $311.84 |
| 6 | Apr 05, 2022 | $311.84 |
| 7 | May 05, 2022 | $311.84 |
| 8 | Jun 06, 2022 | $311.84 |
| 9 | Jul 05, 2022 | $311.84 |
| 10 | Aug 05, 2022 | $311.84 |
| 11 | Sep 06, 2022 | $311.84 |
| 12 | Oct 05, 2022 | $311.84 |
| 13 | Nov 07, 2022 | $311.84 |
| 14 | Dec 05, 2022 | $311.84 |
| 15 | Jan 05, 2023 | $311.84 |
| 16 | Feb 06, 2023 | $311.84 |
| 17 | Mar 06, 2023 | $311.84 |
| 18 | Apr 05, 2023 | $311.84 |
| 19 | May 05, 2023 | $311.84 |
| 20 | Jun 05, 2023 | $311.84 |
| 21 | Jul 05, 2023 | $311.84 |
| 22 | Aug 07, 2023 | $311.84 |
| 23 | Sep 05, 2023 | $311.84 |
| 24 | Oct 05, 2023 | $311.82 |

## Electronic Payment Authorization

**Bank Name:** Bank of America
**Name on Account:** Dan Cooper
**Account Type:** Checking
          Other (specify: _____ )
**Routing Number:** ~~████████~~
**Account Number:** ~~████████~~9800
**Next Payment Date:** Nov 05, 2021 **Amount:** $ 311.84
**Recurring Payment Date:** 5th

By signing below, I authorize and permit LPG or their designees to initiate electronic funds transfer via an Automated Clearing House system (ACH) from my account listed above. I will also provide LPG with a voided check or savings deposit slip.

If necessary, LPG may make adjustments if errors have occurred during the transaction. The date of the draft is listed above, however, if the draft date falls on a weekend or bank holiday, the debit transaction will take place on the next business day. This authority will remain in effect until LPG is notified by the member in writing at least 5 days prior to the next scheduled draft date. No other forms of cancellation by members will be observed. If the debit is returned because of non-sufficient funds or uncollected funds, then the originator and its financial institution may reinitiate the entry up to two (2) times. The reversal of funds from a client's account that was drafted in error cannot be made until seven business days from the draft date. The member agrees to waive all rights of reversal or refusal of any payment on any draft that LPG may make against the member's bank account while services are performed. The member agrees with all of the provisions and conditions outlined within.

## Acknowledgment of Refunds & Draft Date Changes

ACH Refunds: If a refund is due such will be made through the ACH process only. Refunds may take up to 10 days to process. In the event my EFT or draft is returned from my bank unpaid, I agree that a fee of $25.00 or as allowed by law may be charged to my account via draft or EFT. Furthermore, I warrant that I am authorized to execute this payment authorization and the above information is true and correct. Draft Date Changes: A client may stop any ACH debit by providing written notice to LPG at least three (3) business days prior to the scheduled payment. If you should need to notify us of your intent to cancel and/or revoke this authorization you must contact us three (3) business days prior to the questioned debit being initiated.

**Client Signature:**

**Date:**

**Printed Name:**
Dan Cooper

## Preauthorized Checking and ACH Authorization Form

I hereby apply for and agree to establish a non-interest bearing special purpose account (the "Account") with a bank ("Bank") selected by LPG, its payments processors, and/or their successors for the purpose of accumulating funds to pay for such goods and services as I so direct LPG to perform.  This application is subject to Bank's customer identification program, as required by the USA PATRIOT ACT and other applicable laws, and accordingly, I hereby represent that the above information is true and complete to the best of my knowledge and belief.  The bank account information provided above may be subject to account validation processes to include pre-notation and a $0.01 micro-deposit.

**Account Owner Name:** Dan Cooper

**Address:**3000 Custer Rd   **City:**Plano   **State:**TX   **Zip:** 75075

**Mobile Phone #:   E-Mail** ~~~~@gmail.com

## DESIGNATED BANK ACCOUNT INFORMATION

**Bank Name:** Bank of America

**Name as it appears on bank ACCOUNT:**  Dan Cooper

**Routing Number:** ~~~~   **Account Number:** ~~~~800   **Checking or Saving:** Checking

## DESIGNATED BANK ACCOUNT PAYMENT AUTHORIZATION SCHEDULE

**Total Amount of Debit:** $311.84        **Date of Next Debit:**Nov 05, 2021

**I authorize Payment Automation Network** to initiate Automatic Clearing House (ACH) or Electronic Funds Transfer (EFT) or Remotely Created Check (RCC) from my designated bank account at the financial institution identified above. I authorize Payment Automation Network to debit my bank account according to the schedule of debits provided to Payment Automation Network by me or on my behalf or as otherwise provided by agreement. I understand that debits will be withdrawn on the due date unless otherwise indicated and that sufficient funds must be available in designated account at least two (2) business days prior to the actual date of the debit. Upon my approval, Payment Automation Network may adjust the amount being debited from designated bank account. This authorization is to remain in force until the schedule of debits is completed or until Payment Automation Network has received written notification from me of a change or termination, allowing Payment Automation Network no fewer than five (5) business days to act. Payment Automation Network shall not be liable to any person for not completing a transaction as a result of any limit on my designated bank account or if a financial institution fails to honor any debit from such account. I understand it is my responsibility to notify Payment Automation Network immediately if a scheduled debit does not occur. I authorize Payment Automation Network to recover funds by ACH/EFT/RCC debit from my bank account in the event of an error or in the event that a prior debit is returned for any reason, including non-sufficient funds. I understand that a $25.00 service charge will be added for every NSF draft.  I understand I can call Payment Automation Network at 800-813-3740 to cancel the automatic draft payments. Payments will be drafted on the payment due date of the original Servicing

agreement.  I understand and agree that Payment Automation Network, Inc. is a private company, and is not affiliated with any academic or governmental entity. The Payment Automation Network, Inc. service bridges the gap between the student loan consolidation company Software and ACH, EFT, or RCC processor.  Payment Automation Network, Inc. is not a money transmitter or debt collection agency and does not receive money from individual debtors. Payment Automation Network, Inc. is not engaged in the business of debt or credit counseling or the provision of other services to individual debtors. Payment Automation Network, Inc. does not solicit, offer loan consolidation services, or provide services directly to individual debtors. Payment Automation Network, Inc. does not have a contractual relationship with individual debtors to affect the adjustment, compromise, or discharge of any loan account.

I have read and understand the information contained in this document and I affirm that the above information given by me is accurate and true to the best of my knowledge.

**Account Holder's Signature:**                                              **Date:**

*ex C*

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**
**MADISON DIVISION**

PATRICK H. HEIER,

    Plaintiff,

v.

THE LITIGATION PRACTICE GROUP,
PC,

    Defendants.

CIVIL COMPLAINT

CASE NO. 3:21-cv-00617

JURY TRIAL DEMANDED

## COMPLAINT

Now comes PATRICK H. HEIER ("Plaintiff"), by and through the undersigned, complaining as to the conduct of THE LITIGATION PRACTICE GROUP, PC ("Defendant") as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 *et seq.,* as well as the Wisconsin Credit Services Organization Act ("WCSOA") under Wis. Stat. § 422.501 *et seq.,* for Defendant's unlawful conduct.

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the CROA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1679, as well as 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business within the Western District of Wisconsin and a substantial portion of the events or omissions giving rise to the instant claims occurred within the Western District of Wisconsin.

1

*ex D*

Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Meghan E. George (SBN 274525)
Tom E. Wheeler (SBN 308789)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21550 Oxnard St., Suite 780
Woodland Hills, CA 91367
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@ toddflaw.com
abacon@ toddflaw.com
mgeorge@toddflaw.com
twheeler@toddflaw.com
***Attorneys for Plaintiff***

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRENNAN LANDY, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION** |
| vs. | **COMPLAINT FOR VIOLATIONS OF:** |
| LEAPFORWARD FINANCIAL; BAT, INC. DBA COAST PROCESSING; THE LITIGATION PRACTICE GROUP PC; DANIEL S. MARCH; BRIAN REALE and DOES 1 through 10, inclusive, and each of them, | 1. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)] |
| | 2. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(b)] |
| Defendants. | 3. NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)] |
| | 4. WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227(c)] |
| | **DEMAND FOR JURY TRIAL** |

ℓ X E

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

GERARD JACKSON, individually and on
behalf of all others similarly situated,　　　　:　　Civil File No.

　　　Plaintiff,　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　　:

v.　　　　　　　　　　　　　　　　　　　:　　**COMPLAINT – CLASS ACTION**

　　　　　　　　　　　　　　　　　　　　　:

THE LITIGATION PRACTICE GROUP PC　　:

　　　Defendant.　　　　　　　　　　　　　:

---

### Preliminary Statement

1.　　Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2.　　"The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive

JUDGE DAVID GUADERRAMA

$e \times F$

### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

FILED

2021 JAN 19  PM 4: 48

CLERK US DISTRICT COURT
ESTERN DISTRICT OF TEXAS

BY_____

**BRANDON CALLIER,**

§
§
§
§
§

    **Plaintiff,**

§
§

# EP21CV0011

    **v.**

§
§
§

**THE LITIGATION PRACTICE GROUP, PC**
a California professional corporation, **DANIEL**
**MARCH, KEEPING CAPITAL, LLC,** a Florida
Limited Liability Company d/b/a **DEBT**
**DISSOLUTION,** and **DAVID KING**

§
§
§
§
§
§
§

    **Defendants.**

§
§

### PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1. The Plaintiff is BRANDON CALLIER, a natural person, resident of the Western District of Texas,

   and was present in Texas for all calls, in this case in El Paso County, Texas.

2. Defendant THE LITIGATION PRACTICE GROUP, PC ("Litigation") is a professional corporation

   organized and existing under the laws of California and can be served via registered agent Magda L

   Janicki, 110 SE 6th Street, Suite 1700, Fort Lauderdale Florida 33301.

3. Defendant DANIEL MARCH ("March") is a natural person, resident of California, Managing

   Shareholder of The Litigation Practice Group, PC and can be served at 100 Spectrum Center Drive,

   Suite 900, Irvine, California 92618.

4. Defendant KEEPING CAPITAL LLC ("Keeping") d/b/a Debt Dissolution is a Limited Liability

   Company organized and existing under the laws of Florida and can be served via registered agent

1

EX G

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

SHANE SCOFIELD, individually and on
behalf of all others similarly situated,

  Plaintiff,

v.

THE LITIGATION PRACTICE GROUP PC

  Defendant.

Civil File No. 1:22-CV-0081D

**COMPLAINT – CLASS ACTION**

---

## Preliminary Statement

1. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2. The Plaintiff Shane Scofield alleges The Litigation Practice Group PC ("Litigation Practice") made pre-recorded telemarketing calls for purposes of promoting Litigation Practice's debt relief services. They did so and contacted individuals without their prior express written consent.



exH

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

CAROLYN BEECH,
on behalf of herself and the
class members described below,

        Plaintiff,

vs.

THE LITIGATION PRACTICE
GROUP, PC,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**

MAR 17 2022

ARTHUR JOHNSTON
BY_____ DEPUTY

1:22cv57H50-RHWR

## COMPLAINT – CLASS ACTION

### NATURE OF THE ACTION

1.    Plaintiff brings this action for damages pursuant to the Credit Repair Organizations Act ("CROA") under 15 U.S.C. § 1679 et seq.

### JURISDICTION AND VENUE

2.    This Court has jurisdiction under 15 U.S.C §1679 and 28 U.S.C. §§1331 and 1337. On information and belief, the Court also has jurisdiction under 28 U.S.C. §1332(d), the amount in controversy exceeding $5 million on a classwide basis, there being more than 100 class members, and the parties being of diverse citizenship.

3.    This Court has personal jurisdiction over Defendant because Defendant solicited business from residents of Mississippi and collected money from residents of Mississippi under contracts that are void pursuant to the CROA.

4.    Venue in this District is proper because a material portion of the events at issue occurred here.

5.    Article III is satisfied because Plaintiff and each class member is entitled to void a contract providing for the payment of money to Defendant, or recover money back from Defendant, or both.

1



CLERK COMMON
PLEAS COURT
LICKING CO. OHIO

2020 APR -3  PM 1: 11

GARY R. WALTERS
CLERK

# IN THE LICKING COUNTY COURT OF COMMON PLEAS
## CIVIL DIVISION

CHRISTOPHER CRANE
554 Sherwood Downs Road S
Newark, OH 43055-3236

                Plaintiff,

     v.

DEBT ADVISORS OF AMERICA
6863 Friars Road
San Diego, CA  92108

and,

MATTHEW CLEGG
c/o DEBT ADVISORS OF AMERICA, LLC
6863 Friars Road
San Diego, CA  92108

and,

RICHARD SENITTE
c/o DEBT ADVISORS OF AMERICA, LLC
6863 Friars Road
San Diego, CA  92108

and,

LITIGATION PRACTICE GROUP
1351 Calle Avanzado, Suite 4
San Clemente, CA  92673

and,

LITIGATION PRACTICE GROUP
100 Spectrum Center Drive, Suite 900
Irvine, CA  92618

and,

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

CASE NO.:   2 0 C V 0 4 4 8

JUDGE:

**COMPLAINT AND REQUEST**
**FOR DECLARATORY AND**
**INJUNCTIVE RELIEF**

**Jury Demand Endorsed Herein**



EXHIBIT

B



USPS FIRST-CLASS MAIL ®

F

SHIP
TO:

PORTLAND OR 97201

(420) 97201

U.S. POSTAGE
$2.96
FCM LG ENV
75070
Date of sale
04/07/22
06  25  SSK
11486444

846620407165127

10.00 oz



US District Court
411 West Fourth St
Santa Ana, CA 92701

CLERK U.S. DISTRICT COURT
RECEIVED
APR 11 2022
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY